Michael S. Kogan (SBN 128500)
**KOGAN LAW FIRM, APC**
11500 W. Olympic Blvd., Suite 400
Los Angeles, California 90064
Telephone (310) 954-1690
mkogan@koganlawfirm.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | ) Case No. 1:22-bk-10141-MB |
| | ) |
| VANESSA STOLLER, | ) Chapter 11 |
| | ) |
| Debtors. | ) **MOTION OF DEBTOR FOR SALE OF** |
| | ) **PROPERTY OF THE ESTATE FREE AND** |
| | ) **CLEAR OF LIENS; MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES AND** |
| | ) **DECLARATION OF VANESSA STOLLER** |
| | ) **IN SUPPORT THEREOF** |
| | ) |
| | ) **Date:        August 24, 2022** |
| | ) **Time:        1:30 p.m.** |
| | ) **Place:       Courtroom 303 VIA ZOOM** |
| | ) |
| | ) |

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS**

1    Vanessa Stoller (the "**Debtor**"), hereby moves the Court on her Motion of Debtor for Sale

2  of Property of the Estate Free and Clear of Liens (the "**Motion**"), pursuant to Section 363(b)(1) of

3  Title 11 of the Bankruptcy Code (the "**Bankruptcy Code**"), for an order approving the sale of the

4  estate's community property ownership interest in the real property and improvements located at

5  5747 Hoback Glen Road, Hidden Hills, California 91302 (the "**Property**") to Yair Sisso and

6  Shay Gozlan and/or assigne (the "**Buyer**"). The Buyer will pay the purchase price (the "**Purchase**

7  **Price**") of $6,085,000 for the Property. The Property will be sold free and clear of any liens,

8  claims, and interests pursuant to Sections 363(f)(1), (f)(2) and (f)(3) of the Bankruptcy Code with

9  the lien rights, if any, to attach to the sale proceeds.[1] The total value of the liens against the

10  Property is approximately $4,664,877. The Debtor believes that all burdens of establishing a

11  sound business justification for the sale of the Property have been met. The sale will further be

12  advertised by the local real estate agents in the local newspapers and the MLS listings, and will be

13  noticed to creditors and interested parties. The Motion also requests payment of sales commissions

14  and the Debtors homestead exemption.

15    The Debtor believes that all burdens of establishing a sound business justification for the

16  sale of the Property have been met:

17    1.    The Debtor believes that the Purchase Price maximizes the value of the Property to

18  the estate.

19    2.    The terms of the sale with the Buyer has been negotiated at arms-length and the

20  consideration for purchase of the Property is fair and reasonable, and represents the fair market

21  value for the Property.

22    3.    Additionally, the Debtor has satisfied all procedural requisites of notice of the

23  Motion to obtain Court approval of this sale.

24    4.    The terms of the proposed sale are embodied in the California Residential Purchase

25  Agreement and Joint Escrow Instructions and amendments (the "**Agreement**"), attached as

26  Exhibit "A" to the Motion and incorporated herein by this reference.

27  _____

28  [1]    The Property will not be sold free and clear of certain covenants and easements which are
fully described in the Motion.

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS**    1

1    The Purchase Price is the highest and best offer that the Debtor has received and expects to

2    receive for the Property. Furthermore, to maximize the greatest value for this estate and its

3    creditors, parties offering to purchase the Property, shall have the opportunity to overbid

4    ("**Overbid**") for the purchase of the Property at the hearing on the Motion, on substantially the

5    same or better terms as set forth in the Agreement.

6    The sale of the Property will be subject to an overbid auction to be held at the hearing on

7    the Motion, with any overbid to begin at $6,300,000, or such amount set by the Court. In order to

8    maximize the greatest value for this estate and its creditors, at the time of the Sale, parties offering

9    to purchase the Property free and clear of all liens and encumbrances shall have the opportunity to

10   overbid the purchase of the Property on substantially the same or better terms as those set forth in

11   the Agreement. A true and correct copy of the Agreement is attached to the Motion as Exhibit

12

13   "A." Any initial overbid shall be in an amount not less than $6,300,000, with subsequent bids in

14   increments of $25,000 or such amount set by the Court.

15   Any party that wishes to overbid must bring cash, cashier's check, or money order made

16   payable to "Vanessa Stoller", DIP" in the amount of $200,000 to the office of Debtors counsel two

17   (2) days before the hearing date. Such deposit shall become the non-refundable deposit of the

18   successful buyer(s) at the sale. No interest will be paid on such deposits. The deposit shall be

19   forfeited to the Debtor if the winning overbidder or buyer(s) is unable, for any reason to close the

20   sale within seven (7) days of the hearing. Additionally, any overbidder must be able to

21   demonstrate the ability to pay the final purchase price and the ability to successfully consummate

22   the sale transaction, at the time of the Sale. The Buyer shall have the right to participate in any

23   overbid proceeding. In the event of an overbid proceeding, the remaining portion of the purchase

24   price shall be made within seven (7) business days of the Sale. Pursuant to the Agreement, the

25   estate's interest in the Property shall be sold "as is" with no warranties whatsoever as to condition,

26   fitness for use, sale or repair, or otherwise.

27

28

1    In the event of an overbid proceeding, the last bid before the final successful overbid shall

2  be noted as a back-up bid.  In the event of default by the successful overbidder, the back-up bid

3  shall be accepted by the Debtor and the back-up bidder shall have seven (7) business days to

4  complete the sale transaction.

5    The Motion is based upon the Notice, the Motion, the attached Memorandum of Points and

6  Authorities, the Declaration of Vanessa Stoller, the pleadings on file in this case, and upon such

7  other evidence as may properly be presented to the Court at the hearing.

8    Any party desiring a copy of the Motion, Memorandum of Points and Authorities, the

9  Agreement, and Declaration of Vanessa Stoller may review the file at the Court or contact the

10  attorneys for the Debtor for a copy.

11    Wherefore, the Debtor respectfully requests that the Court authorize the sale of the

12  Property pursuant to the terms of the Agreement.

13  DATED:  July 28, 2022                     **KOGAN LAW FIRM, APC**
                                             MICHAEL S. KOGAN
14

15

16                                           By: /s/Michael S. Kogan
                                                 Michael S. Kogan
17                                               Attorneys for Vanessa Stoller

18

19

20

21

22

23

24

25

26

27

28

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS**    3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Through this Motion, Vanessa Stoller (the "**Debtor**"), moves the Court on her Motion of Debtor for Sale of Property of the Estate Free and Clear of Liens (the "**Motion**"), pursuant to Section 363(b)(1) of Title 11 of the Bankruptcy Code (the "**Bankruptcy Code**"), for an order approving the sale of the estate's community property ownership interest in the real property and improvements located at 5747 Hoback Glen Road, Hidden Hills, California 91302 (the "**Property**") to Yair Sisso and Shay Gozlan and/or assigne (the "**Buyer**"). The Buyer will pay the purchase price (the "**Purchase Price**") of $6,085,000 for the Property. The Property will be sold free and clear of any liens, claims, and interests pursuant to Sections 363(f)(1), (f)(2) and (f)(3) of the Bankruptcy Code with the lien rights, if any, to attach to the sale proceeds.[2] The total value of the liens against the Property is approximately $4,664,877. The Debtor believes that all burdens of establishing a sound business justification for the sale of the Property have been met. The sale will further be advertised by the local real estate agents in the local newspapers and the MLS listings, and will be noticed to creditors and interested parties. The Motion also requests payment of sales commissions and the Debtors homestead exemption.

The Debtor seeks an order approving the sale of the interest of the Debtor's bankruptcy estate (the "**Estate**") in the Property, free and clear of all liens, claims and interests. The Debtor believes that all burdens of establishing a sound business justification for the sale of the Property have been met. The Debtor believes that the Purchase Price maximizes the value of the Property to the Estate. From the sale proceeds, the Estate anticipates that it will be able to pay unsecured creditors a substantial amount of their claims. The terms of the sale with the Buyer have been

---

[2] The Property will not be sold free and clear of certain covenants and easements which are fully described in the Motion.

1  negotiated at arms-length and the consideration for purchase of the Property is fair and reasonable,

2  and represents the fair market value for the Property.  Therefore, the Motion should be approved.

3  

4  
## II.

5  
### FACTUAL AND PROCEDURAL BACKGROUND

6  
#### A.  General Background.

7  

8  On or about February 2, 2022, the Debtor commenced this case by filing a Voluntary

9  Petition under Chapter 11, Title 11, United States Code (the **"Petition Date"**). Since the

10  commencement of the bankruptcy case, the Debtor has continued to manage its own affairs as a

11  Debtor-in-Possession ("DIP") pursuant to §§1107 and 1108 of the Bankruptcy Code.

12  There were several precipitating factors leading to this bankruptcy filing. A significant

13  factor that contributed to the bankruptcy filing was a foreclosure proceeding commenced by the

14  Hidden Hills Home Owners Association (**"HOA"**). The HOA attempted to foreclose on the

15  Debtor's interest in the real property located at 5747 Hoback Glen Rd., Hidden Hills, California

16  (the **"Property"**). Further the first lien holder on the Property has disputed the Debtors

17  amount of debt owing for many years. Therefore, given these issues the Debtor determined that

18  chapter 11 relief was appropriate.

19  Prior to filing the bankruptcy petition, the Debtor attempted to work out a reasonable

20  solution with the HOA but was unable to reach a resolution of her disputes. Further, an additional

21  cause for the bankruptcy filing was the civil action in the Los Angeles Superior Court entitled

22  Michael and Vanessa Stoller v. Wall Street Mortgage, et. al. (Case No. LC102689) (the

23  **"Lawsuit"**). The Lawsuit relates to the disputes with respect to a promised loan modification

24  agreement on the Property which dates back many years. In summary, after entering into and

25  performing all conditions under a Special Forbearance Agreement with America's Servicing

26  Company ("ASC"), the servicer on the loan on the Debtors Property, ASC failed to provide a

27  permanent loan modification as represented and promised. Thereafter, several attempts were

28  made to obtain the permanent modification to no avail. Consequently, the Debtor filed a

1    state court action in 2015, against the lender, servicer and various agents for various claims

2    including statutory defective foreclosure (i.e., improper and unlawful assignment of a non-

3    existent mortgage, etc.), breach of contract, promissory estoppel and other related claims.

4    Presently, ASC/lender is enjoined from foreclosing on the Property pending the outcome of the

5    Lawsuit. It is possible that the defendants in the Lawsuit will be able to dismiss the Lawsuit as it

6    has been considered property of a prior bankruptcy case the Debtor filed (Case No. 1:12-bk-

7    14347-MT (the "**2012 Chapter 7 Case**")), and the trustee in that case has sold the Lawsuit

8    through a settlement agreement which provides for dismissal of the Lawsuit. That sale has been

9    approved by that court, and thus it is assumed by the time of the sale herein the Lawsuit will have

10    been dismissed.[3]

11            **B.  The Property.**

12
13            One of the Debtor's assets listed in the Schedule of Assets and Liabilities was the Debtor's
14
      community property ownership interest in the Property, which by virtue of the filing of this
15
      bankruptcy case, the property interests were transferred to this bankruptcy estate.

16            The Debtor, as the owner of an interest in the Property desires to liquidate her interest in
17
      the Property to pay creditors, and the Buyer desires to purchase the estate's interest in the Property
18
      and settle any claims that the Debtor may possess regarding the estate's property interest in the
19
      Property.
20
21            The Debtor agreed with the Buyer on the price based upon (1) the amount of time to

22    market the Property, (2) the potential risks concerning the estate's property interest, and the net

23    equity available to the estate, (3) additional costs to maintain the Property and service its debt to

24    generate a sufficient return for creditors, and (4) the total of secured and unsecured claims in the

25    Debtor's estate, and the sale would provide a significant distribution on allowed claims. The

26
27    ─────────────────────
      [3] The debtors in the 2012 Chapter 7 Case have filed an appeal of the courts approval of the sale of
28            the Lawsuit.

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS    6**

1   Debtor's real estate brokers determined that the Property had a fair market value of approximately

2   $6,085,000. The secured liens on the Property are approximately $4,664,877, and after the Debtors

3   claimed exemption of $600,000, the net to the bankruptcy estate after sales costs would be

4   approximately $720,123. Thus, based upon these factors the Debtor determined that the purchase

5   price for the Property by the Buyer should be $6,085,000. Attached hereto and incorporated herein

6   by this reference as Exhibit "A" is a true and correct copy of the Agreement.

7

8               C.  **The Liens and Encumbrances.**

9

10      The Property will be sold free and clear of all liens, claims and encumbrances pursuant to

11  Section 363(b)(1).  In addition, the estate will sell the Property free and clear of all liens, claims

12  and encumbrances pursuant to Sections 363(f)(2) and 363(f)(3). The Debtors understanding is that

13  the proceeds will be sufficient to pay all liens and encumbrances on the Property.

14      Attached hereto and incorporated herein by this reference as Exhibit "B" is a true and

15  correct copy of a preliminary title report on the Property prepared by Ticor Title as of May 22,

16  2022 (the **"Title Report"**) which describes the liens and encumbrances of the Property.  The

17  following is an analysis and the Debtor's proposed disposition of the various liens and

18  encumbrances found in the Title Report:

19

20      1.      Reference[4] Nos. 1-15, Schedule B – These are liens for property taxes and

21  assessments in the approximate total amount of $0.00, and are generally encumbrances for

22  covenants and easements that run with the land.  The Property will not be sold free and clear of

23  these encumbrances.  The Debtor will sell the Property free and clear of these liens other than

24  property taxes which will be paid from escrow, with the liens to attach to the proceeds of the sale.

25  The Debtor reserves the right to dispute any amount asserted on behalf of property tax liens.

26

27  _____

28  [4]     All Reference Nos. are to those set forth in the Title Report.

2.    <u>Reference Nos. 17, Schedule B</u> – This is an asserted first priority lien of US Bank National Association as an assignee of Wall Street Mortgage Bankers Ltd. pursuant to a Deed of Trust dated April 7, 2005 (the **"US Bank Lien"**). The Debtor will sell the Property free and clear of this lien which was claimed to be in the amount of $4,224,477 in the proof of claim ("POC") filed by Specialized Loan Servicing LLC (Adjustable Rate Mortgage Trust 2006-2, Adjustable Rate Mortgage-Backed Pass-Through Certificates, Series 2006-2, U.S. Bank National Association, as Trustee) as claim #4 in the Debtors bankruptcy case, with the lien to be paid from the proceeds of the sale to be held in the DIP account until the amount of the claim which is disputed is determined by the Court, and then paid in full from, the proceeds of the sale with the lien rights, if any, to attach to the sale proceeds held in the DIP account.

3.    <u>Reference Nos. 18, Schedule B</u> – This is an asserted second priority lien of Las Hades Investments, LLC pursuant to a Deed of Trust dated August 27, 2008 (the **"Las Hades Lien"**). The Debtor will sell the Property free and clear of this lien, and this lien has been satisfied and notice of satisfaction and full reconveyance has been recorded, and thus Las Hades will be paid $0.00 from the sale.

4.    <u>Reference Nos. 19, 30, 33, Schedule B</u> – This is an asserted third priority lien of the Hidden Hills Community Association ("**HHCA**") dated October 6, 2009 (the **"HHCA Lien"**). The Debtor will sell the Property free and clear of this lien which was claimed to be $122,121 in the Notice of Default recorded as document # 2021-1291555 on August 23, 2021, and the HHCA did not file a POC, with the lien to be paid from the proceeds of the sale to be held in the DIP account until the amount of the claim which is disputed is determined by the Court, and then paid in full from, the proceeds of the sale with the lien rights, if any, to attach to the sale proceeds held in the DIP account.

5.    <u>Reference Nos. 20, 21, 22 and 23, Schedule B</u> – This is an asserted fourth priority

1  lien of First Regional Bank in the amount of $6,504,153, pursuant to a writ of execution and

2  abstract of judgment against Michael Stoller, the Debtors spouse[5] from a case in Kern County

3  Superior Court (Case No. S-1500-CV-266248-SPC) in which First Regional Bank received a

4  judgment against Michael Stoller, among others recorded October 26, 2009 which has been

5  renewed on January 16, 2020 (the **"First Regional Bank Lien"**).  The Debtor will sell the

6  Property free and clear of this lien, and the Debtor believes this lien has either been satisfied by

7  the other defendants, or the Debtor will either file a motion to avoid the lien under section 522(f)

8  as it is a judicial lien that impairs the Debtors homestead exemption, or have it disallowed by the

9  Court.

10     6.    Reference Nos. 24, 29, 38, Schedule B – This is an asserted fifth priority lien of the

11  United States of America, District Director of Internal Revenue Service (**"IRS"**) dated January 20,

12  2017 (the **"IRS Lien"**).  The Debtor will sell the Property free and clear of this lien which was

13  claimed to be secured in the amount of $249,742 in the POC filed by the IRS as claim #3-2 in the

14  Debtors bankruptcy case, with the lien to be paid from the proceeds of the sale at the close of

15  escrow.

16     7.    Reference Nos. 25, Schedule B – This is an asserted six priority lien of Law Group

17  Personal Court Reporters, Inc. in the amount of $6,434, pursuant to an abstract of judgment

18  against Michael Stoller, the Debtors spouse from a case in Los Angeles Superior Court (Case No.

19  16a15248) in which Personal Court Reporters, Inc. received a judgment against Michael Stoller

20  and recorded February 3, 2017 (the **"Personal Court Reporters, Inc. Lien"**).  The Debtor will

21  sell the Property free and clear of this lien, and the Debtor believes this lien has either been

22  satisfied, or the Debtor will either file a motion to avoid the lien under section 522(f) as it is a

23  judicial lien that impairs the Debtors homestead exemption, or have it disallowed by the Court.

---

[5] The Property is a community asset.

8.    <u>Reference Nos. 26, 28, 35, Schedule B</u> – This is an asserted seventh priority lien of the State of California Franchise Tax Board ("**FTB**") dated January 20, 2017 (the "**FTB Lien**"). The Debtor will sell the Property free and clear of this lien which was claimed to be secured in the amount of $68,537 in the POC filed by the FTB as claim #6-2 in the Debtors bankruptcy case, with the lien to be paid from the proceeds of the sale at the close of escrow.

9.    <u>Reference Nos. 25, Schedule B</u> – This is an asserted eighth priority lien of Make It Nice, LLC in the amount of $3,000, pursuant to an abstract of judgment against Michael Stoller, the Debtors spouse from a case in Los Angeles Superior Court (Case No. 16b00109) in which of Make It Nice, LLC received a judgment against Michael Stoller and recorded July 19, 2018 (the "**Make It Nice, LLC Lien**").  The Debtor will sell the Property free and clear of this lien, and the Debtor believes this lien has either been satisfied, or the Debtor will either file a motion to avoid the lien under section 522(f) as it is a judicial lien that impairs the Debtors homestead exemption, or have it disallowed by the Court.

10.    <u>Reference Nos. 36, Schedule B</u> – This is an asserted ninth priority lien of First American Title Company in the amount of $8,500, pursuant to an abstract of judgment against Michael Stoller, the Debtors spouse from a case in Los Angeles Superior Court (Case No. PC050950) in which of First American Title Company received a judgment against Michael Stoller and recorded December 28, 2021 (the "**First American Title Company Lien**").  The Debtor will sell the Property free and clear of this lien, and the Debtor believes this lien has either been satisfied, or the Debtor will either file a motion to avoid the lien under section 522(f) as it is a judicial lien that impairs the Debtors homestead exemption, or have it disallowed by the Court.

11.    <u>Reference No. 16, Schedule B</u> – This is the homestead of the Debtor claimed to be $600,000 in the Debtors Schedules. The Debtor will request authority to pay the Debtor homestead exemption at the close of escrow.

## SUMMARY OF SALE PROCEEDS BASED UPON SALES PRICE OF $6,085,000[6]

| LIEN HOLDERS EXPECTED TO BE PAID | AMOUNT OF SECURED CLAIM IN POC OR SCHEDULED | TOTAL |
|---|---|---|
| US Bank Lien | 4,224,477 | |
| HHCA Lien | 122,121 | |
| IRS | 249,742 | |
| FTB | 68,537 | |
| | | 4,664,877 |
| Sales costs including brokers commission | | 100,00 |
| Homestead exemption payment | | 600,000 |
| | | |
| AMOUNT OF PROCEEDS AVAILABLE FOR CREDITORS | | 720,123 |

### D. Terms of the Sale.

[6] Assuming liens are paid as set forth above.

Yair Sisso and Shay Gozlan, and/or assigne (the "**Buyer**") has offered to purchase the Property for the purchase price (the "**Purchase Price**") of $6,085,000 for the Property and has already made a deposit of $165,780.  The Property will be sold at the hearing on this Motion for sale of the property (the "**Sale Hearing**").  The Sale Hearing will be advertised by the local real estate agents in the local newspapers and the MLS listings, and will be noticed to creditors and interested parties.

The sale of the Property will be subject to an overbid auction to be held at the hearing on the Motion, with any overbid to begin at $6,300,000.  In order to maximize the greatest value for this estate and its creditors, at the time of the Sale, parties offering to purchase the Property free and clear of all liens and encumbrances shall have the opportunity to overbid the purchase of the Property on substantially the same or better terms as those set forth in the Agreement.  A true and correct copy of the Agreement is attached to the Motion as Exhibit "A."  Any initial overbid shall be in an amount not less than $6,300,000, with subsequent bids in increments of $25,000 or such amount set by the Court.

In addition, the Debtor will get a six (6) month leaseback to occupy the Property from the close of escrow for $1 for the period of the leaseback, which is the period the Buyer is expected to obtain the required approvals of its projected modifications to the Property.

Any party that wishes to overbid must bring cash, cashier's check, or money order made payable to "Vanessa Stoller", DIP" in the amount of $200,000 to the office of Debtors counsel two (2) days before the hearing date.  Such deposit shall become the non-refundable deposit of the successful buyer(s) at the sale.  No interest will be paid on such deposits.  The deposit shall be forfeited to the Debtor if the winning overbidder or buyer(s) is unable, for any reason to close the sale within seven (7) days of the hearing.  Additionally, any overbidder must be able to demonstrate the ability to pay the final purchase price and the ability to successfully consummate

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS** 12

the sale transaction, at the time of the Sale.  The Buyer shall have the right to participate in any overbid proceeding.  In the event of an overbid proceeding, the remaining portion of the purchase price shall be made within seven (7) business days of the Sale.  Pursuant to the Agreement, the estate's interest in the Property shall be sold "as is" with no warranties whatsoever as to condition, fitness for use, sale or repair, or otherwise.

In the event of an overbid proceeding, the last bid before the final successful overbid shall be noted as a back-up bid.  In the event of default by the successful overbidder, the back-up bid shall be accepted by the Debtor and the back-up bidder shall have seven (7) business days to complete the sale transaction.

### E.  Compensation of Real Estate Agents.

The Estate has employed the Seller's Broker to market and sell the Property for the Estate. The Seller's Broker's Application to be employed as the real estate broker for the Estate is pending before the Court.  The Seller's Broker has diligently marketed the Property and the Buyer has agreed to purchase the property for $6,085,000.  See Exhibit "A."  The Buyer has made a deposit of $165,780.  The Estate feels that the Seller's Broker is well qualified to act as the Estate's real estate broker and does not hold or represent an interest adverse to the Estate and is a disinterested party.

The efforts of the Seller's Broker, should the sale be approved, will result in the Property's sale for a purchase price that exceeds the value of the liens against the Property, as set forth herein. After costs of sale are paid, there will be unencumbered net assets available for the Estate to pay unsecured creditors a substantial amount of their claims.  The Seller's Broker should be compensated as per the terms of the Application and the Order approving the Application.  The Application and the Court's approving Order provides that the Seller's Broker will receive as compensation, a commission of one percent (1%) for the sale of the Property.  Based upon the

above information, the estate requests that the Court authorize the sale of the Property and

compensation of one percent (1%) of the total Purchase Price.

### III.

## THE COURT SHOULD ALLOW THE SALE
## OF THE PROPERTY TO THE BUYERS

Section 363(b)(1) permits a Debtor, after notice and a hearing, to "sell ..., other than in the

ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The standards for

approval of a sale pursuant to Section 363(b)(1) require the proponent of the sale to establish that:

(1)    a "sound business purpose justifies the sale;"

(2)    "accurate and reasonable notice" of the sale was provided;

(3)    "the price to be paid is adequate, i.e., fair and reasonable;" and

(4)    "'good faith,' i.e., the absence of any lucrative deals with insiders, is present." In
re Industrial Valley Refrig. And Air Cond. Supplies, Inc., 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).

As discussed below, the Debtor believes that all of the above requirements have been met.

Therefore, the Court should grant the Motion and permit the Debtor to sell the Property to the

Buyer pursuant to the terms of the Agreement.

### B. Sound Business Justification.

The Ninth Circuit Bankruptcy Appellate Panel in In re Walter, 83 B.R. 14 (9th Cir. BAP

1988), adopted a flexible, case by case test to determine whether the business purpose for the

proposed sale justifies disposition of property of the estate under Section 363(b). In Walter, the

court adopted the reasoning of the Fifth Circuit in In re Continental Air Lines, Inc., 780 F.2d 1223

(5th Cir. 1986), and the Second Circuit in In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), and

articulated the criteria a bankruptcy court is to consider in deciding whether to approve or disapprove the use or sale of estate property under Section 363(b):

> Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the Debtor, creditors and equity holders, alike. He might for example, look to such relevant facts as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal environs and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge. Walter, 83 B.R. at 19-20, quoting Continental Air Lines, Inc., 780 F.2d at 1226, citing Lionel, 722 F.2d at 1071.

The facts of the instant case justify and substantiate the Debtor's business decision that the contemplated sale of the Property is in the best interest of the estate and should be approved by this Court. The sale price was derived through arms-length negotiations and represents the fair market value for the Property. Furthermore, the Debtor believes that the offer is the best offer she will receive. The foregoing demonstrates that the sale of the Property is justified by sound business purposes, satisfying the first requirement for a sale under 11 U.S.C. Section 363(b).

### C. Fair and Reasonable Price.

For the purposes of Section 363(b), the requirement that a fair and reasonable price be obtained for the property has been defined as requiring a price equaling at least 75% of the fair market value of the property--absent extenuating circumstances. See, e.g., In re Abbotts Dairies of

1    Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); Willemain v. Kivitz, 764 F.2d 1019 (4th Cir.

2    1985); In re Karpe, 84 B.R. 926 (Bankr. M.D. Pa. 1988).  The Debtor believes the offer exceeds

3    the value stated in the Debtors' schedules and believes that the offer is the highest and best offer

4    she will receive.  The terms of sale are all cash to the Debtor.  Thus, the Purchase Price is "fair and

5    reasonable."

6

7           **D.  Good Faith.**

8           The sale meets the good faith requirement.  The good faith requirement "focuses

9    principally on the element of special treatment of the Debtor's insiders in the sale transaction...."

10   Industrial Valley, 77 B.R. at 17.  In the instant case, the Buyers are not insiders within the

11   meaning of Section 101(31).  As set out in detail above, the Purchase Price is fair and reasonable.

12

13   The Debtor believes that the Buyers' offer is the best offer she will receive, and the Buyer has no

14   connection to the Debtor.  For these reasons, the sale meets the good faith requirement.

15          **E.  Accurate and Reasonable Notice.**

16

17          Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure requires that "not less than

18   20 days notice by mail" be given for "a proposed use, sale or lease of property of the estate other

19   than in the ordinary course of business...."  Rule 2002(c)(1) requires the notice to "include the time

20   and place of any public sale, the terms and conditions of any private sale and the time fixed for

21   filing objections."  Notice of the proposed sale has been given in accordance with these

22   Bankruptcy Rules, as evidenced by the Notice of Motion and Motion on file with the Court and

23   the Proof of Service attached thereto.  Thus, the Debtor has satisfied the requirements for accurate

24   and reasonable notice.

25          In view of the compelling business reasons for the sale of the Property, and the sale's

26

27   satisfaction of the procedural and substantive requirements of Section 363(b), the Debtor submits

28

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS** 16

1    that the Court should approve the sale to the Buyer pursuant to Section 363(b).

2                                          IV.

3

4        **THE PROPERTY CAN BE SOLD FREE AND CLEAR OF LIENS**

5

6        Under Section 363(f), a Debtor may sell property out of the ordinary course of business

7    "free and clear of any interest in such property of an entity other than the estate if any one of the

8    following five conditions is met:"

9
        (1)    applicable nonbankruptcy law permits sale of such property free and clear of such
10
     interest;
11

12       (2)    such entity consents;

13       (3)    such interest is a lien and the price at which such property is to be sold is greater

14   than the aggregate value of all liens on such property;

15       (4)    such interest is in dispute; or

16
         (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a
17
     money satisfaction of such interest.
18
         11 U.S.C. Section 363(f).
19

20       This section of the Bankruptcy Code has been interpreted to be disjunctive, rather than the

21   conjunctive.  Thus, the Debtor need only demonstrate that one of the above conditions exists.  In

22   re Elliot, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988.  As discussed below, the facts and

23   circumstances of this case support the conclusion that the Property can be sold free and clear of

24   any liens, claims, or interests pursuant to Section 363(f).

25
         A.  **Section 363(f)(2).**
26

27       The Property may be sold free and clear of the liens against it because the entities with

28

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS** 17

1  interests in the Property, other than the bankruptcy estate, consent. The Debtor has notified all

2  interested parties of the sale through the Notice of Motion. Any party objecting to such sale may

3  file their objection with the Court and be heard at the hearing on the Motion. If there is no

4  objection, the parties will be deemed to have consented to the sale of the Property. See Veltman v.

5  Whetzal, 93 F.3d 517 (8th Cir. 1996) (failure to object to proposed sale, coupled with agreement

6  authorizing sale free of interest, constituted consent); Citicorp Homeowners Services, Inc. v.

7  Elliot, 94 B.R. 343 (E.D. Pa. 1988) (implied consent found); Hargrave v. Pemberton, 175 B.R. 855

8

9  (Bankr. D. N.J. 1994) (failure to object to notice of sale or attend hearing deemed consent to sale

10  for purposes of section 363); In re Shary, 152 B.R. 724 (Bankr. N.D. Ohio 1993) (state's failure to

11  object to transfer of liquor license constituted consent to sale). Thus, pursuant to Section

12  363(f)(2), the Debtor may sell the Property of the estate free and clear of any interest of entities

13  other than the bankruptcy estate because they will be deemed to have consented to the sale of the

14  Property if they make no objections to the sale. **The Debtor believes that the Purchase Price**

15  **exceeds all liens and all liens will be paid off from the proceeds of the sale. If any liens or**

16  **amounts of liens are disputed by the Debtor, the Debtor will maintain an amount equal to**

17  **the disputed amount in its DIP account until such dispute is resolved.**

18

19      **B.  Section 363(f)(3).**

20

21      Under Section 363(f)(3), the Debtor may sell property, pursuant to Section 363(b), free and

22  clear of any interest in that property provided that such interest is a lien, and the price at which

23  such property is to by sold is greater than the aggregate value of all liens on such property. This

24  provision requires the court to look not merely to the value of the lien of the objecting creditor, but

25  to whether the estate has any equity in the property. Collier on Bankruptcy § 363.06[4]. The

26  question becomes, "what is the value of the liens?" Early decisions held that Section 363(f)(3)

27  required that the sales price exceed the face amount of all liens. However, more recent and better

28

reasoned decisions have held that the term "value" should be interpreted as the "secured valued of the liens, not the face amount." See In re Beker Industries Corp., 63 B.R. 474, 477 (Bankr. S.D.N.Y. 1986) (actual value as distinguished from lien); In re Collins, 180 B.R. 447, 450-01 (Bankr. E.D. Va. 1995) (actual value rather than base amount of the lien); In re WPRV-TV, Inc., 143 B.R. 315, 320 (D.P.R.) 1991, 983 F.2d 336 (1st Cir. 1993) (actual value as used in § 506(a); In re Milford Group, Inc., 150 B.R. 904, 906 (Bankr. E.D. Pa. 1992) (value of collateral rather than value of all debts against property); In re Oneida Lake Dev., Inc., 114 B.R. 352 (Bankr. N.D.N.Y 1990) (value of creditor's interest in property rather than face amount of lien); In re Terrace Gardens Park Partnership, 96 B.R. 707 (Bankr. W.D. Tex. 1989) (debtor could sell estate property free and clear of liens, so long as the sale price exceeded the value of the property, even if it did not exceed the aggregate of all the debts asserted to be secured by liens on the property).

Thus, under this interpretation of Section 363(f)(3), the Sale can be authorized since it has been shown that the Property is being sold at fair market value, and proceeds will be paid to the lien holders according to their respective interests up to the value of the Property and the Purchase Price exceeds the amount of all liens. **The Debtor believes that the Purchase Price exceeds all liens and all liens will be paid off from the proceeds of the sale. If any liens or amounts of liens are disputed by the Debtor, the Debtor will maintain an amount equal to the disputed amount in its DIP account until such dispute is resolved.**

### C. Section 363(m).

The Court should hold that the Buyer is a good faith purchaser entitled to the protections afforded a purchaser pursuant to Section 363(m).

Section 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property

1    in good faith, whether or not such entity knew of the pendency of the appeal, unless
such authorization and such sale or lease were stayed pending appeal.

2    11 U.S.C. Section 363(m).

3        Pursuant to Section 363(m), a good faith purchaser is one who buys in good faith and for

4 value.  Lack of good faith is shown by fraud, collusion between the purchaser and the Debtor, or

5 an attempt to take grossly unfair advantage of other bidders.  In re Ewell, 958 F. 2d 276, 279 (9th

6

7 Cir. 1992).  The Buyer has paid the fair market value for the Property and acted in good faith.

8 Therefore, the Court should find that the Buyer is a good faith purchaser pursuant to Section

9 363(m).

10        For all of the reasons set forth above, the Debtor believes that the sale of the Property free

11 and clear of any liens, claims or interests is proper pursuant to Section 363(f).

12 **V.**

13 **WAIVER OF STAY PURSUANT TO FRBP 6004(h) AND 6006(d)**

14        Federal Rules of Bankruptcy Procedure ("**FRBP**") 6004(h) and 6006(d) provide that,

15 unless the Court orders otherwise, an order authorizing the Sale will be stayed for fourteen (14)

16 days after entry. Here, the Debtor requests that the Court waive the stay pursuant to FRBP 6004(h)

17 and 6006(d). The Sale is premised on a prompt closing. This key timing component to the

18 transaction means that the parties cannot afford to wait the automatic fourteen (14) days

19 contemplated by FRBP 6004(h) and 6006(d).

20 **VI.**

21 **CONCLUSION**

22        Based on the foregoing, the Debtor respectfully requests that the Motion be granted and in

23 all respects, and for such other and further relief as the Court deems just and proper.

24

25

26 DATED: July 28, 2022               **KOGAN LAW FIRM, APC**

27                            MICHAEL S. KOGAN

28

1

2          By:  ___/s/Michael S. Kogan_____

3               Michael S. Kogan, Attorneys for the Debtor

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF VANESSA STOLLER

I, Vanessa Stoller, declare and say as follows:

1.      I am an individual over the age of eighteen years and the debtor in the instant bankruptcy case, Vanessa Stoller (the **"Debtor"**).  I have personal knowledge of the facts set forth herein, if called as a witness, I could and would competently testify under oath to these facts set forth herein.  If any facts are based upon information and belief, I so state.

2.      I am the Debtor, the debtor and debtor in possession herein.  In my capacity as the Debtor, I am readily familiar with the Debtor's day-to-day operations, business affairs and books and records.  I have personal knowledge of how the Debtor's records are compiled.  The records of the Debtor are made in the ordinary course of the Debtor's business at or near the time of which they are a record, by such person or persons who owe a business duty to the Debtor to make and maintain such records.  The records of the Debtor are made at or near the time of the occurrence of the event or events of which they are a record.  I have personally reviewed my records and files as they relate to the matters raised in this Declaration and I make this Declaration based upon that personal review.

3.      On or about February 2, 2022, the Debtor commenced this case by filing a Voluntary Petition under Chapter 11, Title 11, United States Code (the **"Petition Date"**). Since the commencement of the bankruptcy case, the Debtor has continued to manage its own affairs as a Debtor-in-Possession (**"DIP"**) pursuant to §§1107 and 1108 of the Bankruptcy Code.

4.      There were several precipitating factors leading to this bankruptcy filing. A significant factor that contributed to the bankruptcy filing was a foreclosure proceeding commenced by the Hidden Hills Home Owners Association (**"HOA"**). The HOA attempted to foreclose on the Debtor's interest in the real property located at 5747 Hoback Glen Rd., Hidden Hills, California (the **"Property"**). Further the first lien holder on the Property has disputed the Debtors amount of debt owing for many years. Therefore, given these issues the Debtor determined that chapter 11 relief was appropriate.

5.      Prior to filing the bankruptcy petition, the Debtor attempted to work out a reasonable solution with the HOA but was unable to reach a resolution of her disputes. Further, an

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS** 22

1  additional cause for the bankruptcy filing was the civil action in the Los Angeles Superior Court

2  entitled <u>Michael and Vanessa Stoller v. Wall Street Mortgage, et. al.</u> (Case No. LC102689) (the

3  "**Lawsuit**"). The Lawsuit relates to the disputes with respect to a promised loan modification

4  agreement on the Property which dates back many years. In summary, after entering into and

5  performing all conditions under a Special Forbearance Agreement with America's Servicing

6  Company ("**ASC**"), the servicer on the loan on the Debtors Property, ASC failed to provide a

7  permanent loan modification as represented and promised. Thereafter, several attempts were

8  made to obtain the permanent modification to no avail. Consequently, the Debtor filed a

9  state court action in 2015, against the lender, servicer and various agents for various claims

10 including statutory defective foreclosure (i.e., improper and unlawful assignment of a non-

11 existent mortgage, etc.), breach of contract, promissory estoppel and other related claims.

12 Presently, ASC/lender is enjoined from foreclosing on the Property pending the outcome of the

13 Lawsuit. It is possible that the defendants in the Lawsuit will be able to dismiss the Lawsuit as it

14 has been considered property of a prior bankruptcy case the Debtor filed (Case No. 1:12-bk-

15 14347-MT (the "**2012 Chapter 7 Case**")), and the trustee in that case has sold the Lawsuit

16 through a settlement agreement which provides for dismissal of the Lawsuit. That sale has been

17 approved by that court, and thus it is assumed by the time of the sale herein the Lawsuit will have

18 been dismissed.[7]

19    6.    One of the Debtor's assets listed in the Schedule of Assets and Liabilities was the

20 Debtor's community property ownership interest in the Property, which by virtue of the filing of

21 this bankruptcy case, the property interests were transferred to this bankruptcy estate.

22

23    7.    The Debtor, as the owner of an interest in the Property desires to liquidate her

24 interest in the Property to pay creditors, and the Buyer desires to purchase the estate's interest in

25 the Property and settle any claims that the Debtor may possess regarding the estate's property

26 interest in the Property.

27 _____

28 [7] The debtors in the 2012 Chapter 7 Case have filed an appeal of the courts approval of the sale of
     the Lawsuit.

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS** 23

8.    The Debtor agreed with the Buyer on the price based upon (1) the amount of time to market the Property, (2) the potential risks concerning the estate's property interest, and the net equity available to the estate, (3) additional costs to maintain the Property and service its debt to generate a sufficient return for creditors, and (4) the total of secured and unsecured claims in the Debtor's estate, and the sale would provide a significant distribution on allowed claims. The Debtor's real estate brokers determined that the Property had a fair market value of approximately $6,085,000. The secured liens on the Property are approximately $4,664,877, and after the Debtors claimed exemption of $600,000, the net to the bankruptcy estate after sales costs would be approximately $720,123. Thus, based upon these factors the Debtor determined that the purchase price for the Property by the Buyer should be $6,085,000. Attached hereto and incorporated herein by this reference as Exhibit "A" is a true and correct copy of the Agreement.

9.    The Property will be sold free and clear of all liens, claims and encumbrances pursuant to Section 363(b)(1).  In addition, the estate will sell the Property free and clear of all liens, claims and encumbrances pursuant to Sections 363(f)(2) and 363(f)(3). The Debtors understanding is that the proceeds will be sufficient to pay all liens and encumbrances on the Property.

10.    Attached hereto and incorporated herein by this reference as Exhibit "B" is a true and correct copy of a preliminary title report on the Property prepared by Ticor Title as of May 22, 2022 (the "**Title Report**") which describes the liens and encumbrances of the Property.  The following is an analysis and the Debtor's proposed disposition of the various liens and encumbrances found in the Title Report:

i.    Reference[8] Nos. 1-15, Schedule B – These are liens for property taxes and assessments in the approximate total amount of $0.00, and are generally encumbrances for

---

[8]    All Reference Nos. are to those set forth in the Title Report.

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS** 24

covenants and easements that run with the land.  The Property will not be sold free and clear of

these encumbrances.  The Debtor will sell the Property free and clear of these liens other than

property taxes which will be paid from escrow, with the liens to attach to the proceeds of the sale.

The Debtor reserves the right to dispute any amount asserted on behalf of property tax liens.

      ii.     <u>Reference Nos. 17, Schedule B</u> – This is an asserted first priority lien of US Bank

National Association as an assignee of Wall Street Mortgage Bankers Ltd. pursuant to a Deed of

Trust dated April 7, 2005 (the **"US Bank Lien"**).  The Debtor will sell the Property free and clear

of this lien which was claimed to be in the amount of $4,224,477 in the proof of claim ("POC")

filed by Specialized Loan Servicing LLC (Adjustable Rate Mortgage Trust 2006-2, Adjustable

Rate Mortgage-Backed Pass-Through Certificates, Series 2006-2, U.S. Bank National Association,

as claim #4 in the Debtors bankruptcy case, with the lien to be paid from the proceeds

of the sale to be held in the DIP account until the amount of the claim which is disputed is

determined by the Court, and then paid in full from, the proceeds of the sale with the lien rights, if

any, to attach to the sale proceeds held in the DIP account.

      iii.     <u>Reference Nos. 18, Schedule B</u> – This is an asserted second priority lien of Las

Hades Investments, LLC pursuant to a Deed of Trust dated August 27, 2008 (the **"Las Hades**

**Lien"**).  The Debtor will sell the Property free and clear of this lien, and this lien has been satisfied

and notice of satisfaction and full reconveyance has been recorded, and thus Las Hades will be

paid $0.00 from the sale.

      iv.     <u>Reference Nos. 19, 30, 33, Schedule B</u> – This is an asserted third priority lien of the

Hidden Hills Community Association ("**HHCA**") dated October 6, 2009 (the **"HHCA Lien"**).

The Debtor will sell the Property free and clear of this lien which was claimed to be $122,121 in

the Notice of Default recorded as document # 2021-1291555 on August 23, 2021, and the HHCA

did not file a POC, with the lien to be paid from the proceeds of the sale to be held in the DIP

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS 25**

1  account until the amount of the claim which is disputed is determined by the Court, and then paid

2  in full from, the proceeds of the sale with the lien rights, if any, to attach to the sale proceeds held

3  in the DIP account.

4

5        v.      Reference Nos. 20, 21, 22 and 23, Schedule B – This is an asserted fourth priority

6  lien of First Regional Bank in the amount of $6,504,153, pursuant to a writ of execution and

7  abstract of judgment against Michael Stoller, the Debtors spouse[9] from a case in Kern County

8  Superior Court (Case No. S-1500-CV-266248-SPC) in which First Regional Bank received a

9  judgment against Michael Stoller, among others recorded October 26, 2009 which has been

10  renewed on January 16, 2020 (the **First Regional Bank Lien**).  The Debtor will sell the

11  Property free and clear of this lien, and the Debtor believes this lien has either been satisfied by

12  the other defendants, or the Debtor will either file a motion to avoid the lien under section 522(f)

13  as it is a judicial lien that impairs the Debtors homestead exemption, or have it disallowed by the

14

15  Court.

16        vi.     Reference Nos. 24, 29, 38, Schedule B – This is an asserted fifth priority lien of the

17  United States of America, District Director of Internal Revenue Service ("**IRS**") dated January 20,

18  2017 (the "**IRS Lien**").  The Debtor will sell the Property free and clear of this lien which was

19  claimed to be secured in the amount of $249,742 in the POC filed by the IRS as claim #3-2 in the

20

21  Debtors bankruptcy case, with the lien to be paid from the proceeds of the sale at the close of

22  escrow.

23        vii.    Reference Nos. 25, Schedule B – This is an asserted six priority lien of Law Group

24  Personal Court Reporters, Inc. in the amount of $6,434, pursuant to an abstract of judgment

25  against Michael Stoller, the Debtors spouse from a case in Los Angeles Superior Court (Case No.

26  16a15248) in which Personal Court Reporters, Inc. received a judgment against Michael Stoller

27

---

[9] The Property is a community asset.

28

and recorded February 3, 2017 (the **"Personal Court Reporters, Inc. Lien"**).  The Debtor will sell the Property free and clear of this lien, and the Debtor believes this lien has either been satisfied, or the Debtor will either file a motion to avoid the lien under section 522(f) as it is a judicial lien that impairs the Debtors homestead exemption, or have it disallowed by the Court.

      viii.   <u>Reference Nos. 26, 28, 35, Schedule B</u> – This is an asserted seventh priority lien of the State of California Franchise Tax Board ("FTB") dated January 20, 2017 (the **"FTB Lien"**).  The Debtor will sell the Property free and clear of this lien which was claimed to be secured in the amount of $68,537 in the POC filed by the FTB as claim #6-2 in the Debtors bankruptcy case, with the lien to be paid from the proceeds of the sale at the close of escrow.

      ix.   <u>Reference Nos. 25, Schedule B</u> – This is an asserted eighth priority lien of Make It Nice, LLC in the amount of $3,000, pursuant to an abstract of judgment against Michael Stoller, the Debtors spouse from a case in Los Angeles Superior Court (Case No. 16b00109) in which of Make It Nice, LLC received a judgment against Michael Stoller and recorded July 19, 2018 (the **"Make It Nice, LLC Lien"**).  The Debtor will sell the Property free and clear of this lien, and the Debtor believes this lien has either been satisfied, or the Debtor will either file a motion to avoid the lien under section 522(f) as it is a judicial lien that impairs the Debtors homestead exemption, or have it disallowed by the Court.

      x.   <u>Reference Nos. 36, Schedule B</u> – This is an asserted ninth priority lien of First American Title Company in the amount of $8,500, pursuant to an abstract of judgment against Michael Stoller, the Debtors spouse from a case in Los Angeles Superior Court (Case No. PC050950) in which of First American Title Company received a judgment against Michael Stoller and recorded December 28, 2021 (the **"First American Title Company Lien"**).  The Debtor will sell the Property free and clear of this lien, and the Debtor believes this lien has either been satisfied, or the Debtor will either file a motion to avoid the lien under section 522(f) as it is a

judicial lien that impairs the Debtors homestead exemption, or have it disallowed by the Court.

xi.    Reference No. 16, Schedule B – This is the homestead of the Debtor claimed to be $600,000 in the Debtors Schedules. The Debtor will request authority to pay the Debtor homestead exemption at the close of escrow.

## SUMMARY OF SALE PROCEEDS BASED UPON SALES PRICE OF $6,085,000[10]

| LIEN HOLDERS EXPECTED TO BE PAID | AMOUNT OF SECURED CLAIM IN POC OR SCHEDULED | TOTAL |
|---|---|---|
| US Bank Lien | 4,224,477 | |
| HHCA Lien | 122,121 | |
| IRS | 249,742 | |
| FTB | 68,537 | |
| | | 4,664,877 |
| Sales costs including brokers commission | | 100,00 |
| Homestead exemption payment | | 600,000 |
| | | |
| AMOUNT OF PROCEEDS AVAILABLE FOR CREDITORS | | 720,123 |

---

[10] Assuming liens are paid as set forth above.

11.     Yair Sisso and Shay Gozlan, and/or assigne (the "**Buyer**") has offered to purchase the Property for the purchase price (the "**Purchase Price**") of $6,085,000 for the Property and has already made a deposit of $165,780. The Property will be sold at the hearing on this Motion for sale of the property (the "**Sale Hearing**"). The Sale Hearing will be advertised by the local real estate agents in the local newspapers and the MLS listings, and will be noticed to creditors and interested parties.

12.     The sale of the Property will be subject to an overbid auction to be held at the hearing on the Motion, with any overbid to begin at $6,300,000. In order to maximize the greatest value for this estate and its creditors, at the time of the Sale, parties offering to purchase the Property free and clear of all liens and encumbrances shall have the opportunity to overbid the purchase of the Property on substantially the same or better terms as those set forth in the Agreement. A true and correct copy of the Agreement is attached to the Motion as Exhibit "A." Any initial overbid shall be in an amount not less than $6,300,000, with subsequent bids in increments of $25,000 or such amount set by the Court.

13.     In addition, the Debtor will get a six (6) month leaseback to occupy the Property from the close of escrow for $1 for the period of the leaseback, which is the period the Buyer is expected to obtain the required approvals of its projected modifications to the Property.

14.     Any party that wishes to overbid must bring cash, cashier's check, or money order made payable to "Vanessa Stoller", DIP" in the amount of $200,000 to the office of Debtors counsel two (2) days before the hearing date. Such deposit shall become the non-refundable deposit of the successful buyer(s) at the sale. No interest will be paid on such deposits. The

**MOTION OF DEBTOR FOR SALE OF PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS** 29

deposit shall be forfeited to the Debtor if the winning overbidder or buyer(s) is unable, for any reason to close the sale within seven (7) days of the hearing.  Additionally, any overbidder must be able to demonstrate the ability to pay the final purchase price and the ability to successfully consummate the sale transaction, at the time of the Sale.  The Buyer shall have the right to participate in any overbid proceeding.  In the event of an overbid proceeding, the remaining portion of the purchase price shall be made within seven (7) business days of the Sale.  Pursuant to the Agreement, the estate's interest in the Property shall be sold "as is" with no warranties whatsoever as to condition, fitness for use, sale or repair, or otherwise.

15.    In the event of an overbid proceeding, the last bid before the final successful overbid shall be noted as a back-up bid.  In the event of default by the successful overbidder, the back-up bid shall be accepted by the Debtor and the back-up bidder shall have seven (7) business days to complete the sale transaction.

16.    The Estate has employed the Seller's Broker to market and sell the Property for the Estate.  The Seller's Broker's Application to be employed as the real estate broker for the Estate is pending before the Court.  The Seller's Broker has diligently marketed the Property and the Buyer has agreed to purchase the property for $6,085,000.  See Exhibit "A."  The Buyer has made a deposit of $165,780.  The Estate feels that the Seller's Broker is well qualified to act as the Estate's real estate broker and does not hold or represent an interest adverse to the Estate and is a disinterested party.

17.    The efforts of the Seller's Broker, should the sale be approved, will result in the Property's sale for a purchase price that exceeds the value of the liens against the Property, as set forth herein.  After costs of sale are paid, there will be unencumbered net assets available for the Estate to pay unsecured creditors a substantial amount of their claims.  The Seller's Broker should be compensated as per the terms of the Application and the Order approving the Application.  The Application and the Court's approving Order provides that the Seller's Broker will receive as

1  compensation, a commission of one percent (1%) for the sale of the Property.  Based upon the

2  above information, the estate requests that the Court authorize the sale of the Property and

3  compensation of one percent (1%) of the total Purchase Price

4      I declare under penalty of perjury under the laws of the United States of America that the

5  foregoing is true and correct.

6      Executed this 20th day of July 2022, at Hidden Hills, California.

7

8

9  Vanessa Stoller

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# SELLER COUNTER OFFER No. 1

**May not be used as a multiple counter offer.**
(C.A.R. Form SCO, Revised 12/21)

Date __05/24/2022__

This is a counter offer to the Purchase Agreement, OR ☐ Buyer Counter Offer No.____, ☐ Other _____ ("Offer"),
dated __05/11/2022__, on property known as _____ **5747 Hoback Glen Rd, Hidden Hills, CA  91302-1229** _____ ("Property"),
between _____ **Yair Sisso and Shay Gozlan and or assignee** _____ ("Buyer")
and _____ **Michael Stoller, Vanessa Stoller** _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. **The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.**
   B. **Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but initial and increased deposit amount(s) shall remain unchanged from the original Offer.**
   C. **OTHER TERMS:**
      _See Text Overflow Addendum (C.A.R. Form TOA) paragraph 1_
      _____
      _____
      _____
      _____
   D. The following attached documents are incorporated into this Seller Counter Offer when Signed and Delivered by both Parties (if both parties do not Sign and Deliver all attached addenda, then any acceptance of this Seller Counter Offer is not valid):
      ☐ Addendum No. _____ (C.A.R. Form ADM)
      ☐ Back Up Offer Addendum (C.A.R. Form BUO)
      ☐ Seller License to Remain in Possession Addendum (C.A.R. Form SIP) (occupancy up to 29 days)
      ☐ Seller Purchase of Replacement Property (C.A.R. Form SPRP)
      ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA)
      ☐ Residential Lease After Sale (C.A.R. Form RLAS) (occupancy for 30 or more days)
      ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
      ☐ Other _____ / _____ ☐ Other _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00 PM on the third Day after the date this Seller Counter Offer is signed in paragraph 4 (if more than one signature then, the last signature date)(or by _____ ☐ AM/ ☐ PM on _____ (date)) **(i)** it is signed in paragraph 5 by Buyer and **(ii)** a copy of the Signed Seller Counter Offer is Delivered to Seller or Seller's Authorized Agent.
   B. OR If Seller withdraws this Seller Counter Offer anytime prior to Buyer's Acceptance by communicating withdrawal to Buyer or Buyer's Agent (C.A.R. Form WOO may be used).
   C. OR If Seller accepts another offer prior to Buyer's Acceptance of this Seller Counter Offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event, Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED.** The terms and conditions of those documents are incorporated into this Seller Counter Offer unless Otherwise Agreed.

   Seller _Michael Stoller_____ **Michael Stoller** Date 5/24/2022 | 8:28 PM
   Seller _Vanessa Stoller_____ **Vanessa Stoller** Date 5/24/2022 | 9:41 PM

5. **ACCEPTANCE: I/WE accept the above Seller Counter Offer (If checked ☐ SUBJECT TO THE ATTACHED BUYER COUNTER OFFER)** and acknowledge receipt of a Copy.
   Buyer _Yair Sisso and or assignee_____ **Yair Sisso and Shay Gozlan and or assignee** Date 5/24/2022 | 9:53 PM
   Buyer _____ Date 5/25/2022 | 3:21 AM

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**SCO Revised 12/21 (PAGE 1 OF 1)**

## SELLER COUNTER OFFER (SCO PAGE 1 OF 1)

**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

**TEXT OVERFLOW ADDENDUM No. _1_**
(C.A.R. Form TOA, Revised 6/16)

This addendum is given in connection with the property known as _____5747 Hoback Glen Rd, Hidden Hills, CA  91302-1229_

_____5747 Hoback Glen Hidden Hills, Ca 91302_____ ("Property"),

in which _____Yair Sisso and Shay Gozlan and or assignee_____ is referred to as ("Buyer")

and _____Michael Stoller, Vanessa Stoller_____ is referred to as ("Seller").

_1) SCO, Paragraph 1C, Agent Other Terms:_

_1. Purchase Price to be $6,085,000_

_2. Close of Escrow to be 60 days after court approval of the sale._

_3. Seller will get a 6 month leaseback beginning from the date of Close of Escrow for the amount of $1 the entire 6 month period. Buyer will cooperate and provide necessary information (i.e., proof of funds, ect) to file in support of the application for court approval._

_4. Seller will leave a $150,000 as a security deposit in escrow, to ensure Seller vacates property at the end of the rent back lease term. Upon Seller vacating the premises, then the security deposit of $150,000 will be released to seller within 5 days of providing notice to buyers of vacating the premises which will be left in clean condition. Buyer shall have the right to inspect._

_5. Escrow to be Escrow of the West._

_6. Title to be Ticor Title._

_7. The house is on septic tank._

_8. Property is being sold as is and is sold pursuant to court approval which will take approx 30 days._

_9. Please see Addendum attached to this counter._

_10. Inspection contingency is 14 days from court approval._

_11. The EMD earnest money deposit after inspection contingency removal is released, will be immediately released to seller out of escrow to seller._

_12. Q14, Both for HOA transfer fees. Each party will pay their share for HOA transfer fee for move in and move out as allocated._

The foregoing terms and conditions are hereby incorporated in and made a part of the paragraph(s) referred to in the document to which this TOA is attached. The undersigned acknowledge receipt of a copy of this TOA.

Buyer _Yair Sisso and or assignee_____ Date _5/24/2022_ | _9:53_ PM |
Buyer _Yair Sisso and Shay Gozlan and or assignee_____ Date _5/25/2022_ | _3:21_ AM |

Seller _MICHAEL STOLLER_____ Date _5/24/2022_ | _8:28_ PM |
Michael Stoller
Seller _Vanessa Stoller_____ Date _5/24/2022_ | _9:41_ PM |
Vanessa Stoller

©2014, California Association of REALTORS®, Inc. United States Copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from C.A.R. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

R E     Published and Distributed by:
E  L    REAL ESTATE BUSINESS SERVICES, LLC.
B  S    a subsidiary of the California Association of REALTORS®
S  C    525 South Virgil Avenue, Los Angeles, California 90020

**TOA REVISED 6/16 (PAGE 1 OF 1)**

**TEXT OVERFLOW ADDENDUM (TOA PAGE 1 OF 1)**



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**SINGLE PARTY COMPENSATION AGREEMENT**
(C.A.R. Form SP, Revised 12/18)

Date Prepared: **May 11, 2022**

**Michael Stoller, Vanessa Stoller** ("Principal") and
**Keller Williams Studio City & KW Luxury** ("Broker")
agree as follows, with regard to the real property in the City of **Hidden Hills**
County of **Los Angeles**, California, described as follows:
**5747 Hoback Glen Rd** ("Property").

## 1. COMPENSATION TO BROKER:

**Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between the Seller/Landlord ("Principal") and Broker.**

Principal agrees to pay Broker, irrespective of agency relationships, either ☒ **1.000** percent of the sales price or total rents for the original term of the lease; or ☐ $_____, as follows:

**A.** ☒ (i) If Principal accepts an offer from **Yair Sisso and/or Assignee** , ("Buyer") to purchase or exchange the Property during the period commencing on (date) _____ and expiring at 11:59 P.M. on (date) _____ ("Compensation Period"), provided Buyer completes the transaction or is prevented from doing so by Principal;
☐ (ii) If Principal enters into a lease agreement with _____ ("Tenant") during the period commencing on (date) _____ and expiring at 11:59 p.m. on (date) _____ ("Compensation Period")

**B.** Buyer and Tenant includes any person or entity related to Buyer or Tenant, or who in any manner acts in Buyer's or Tenant's behalf, including, if Buyer is a corporation, limited liability company, or partnership, any person or entity in which Buyer or Tenant has a legal or beneficial interest, or which has a legal or beneficial interest in Buyer or Tenant.

**C.** Principal hereby irrevocably assigns to Broker the above compensation from Principal's funds and proceeds in escrow, if applicable.

**D.** In event of an exchange, Broker will disclose if Broker is also collecting compensation from additional parties.

**E.** Principal warrants that Principal has no obligation to pay compensation to any other broker regarding the sale, exchange, or lease of Property to Buyer or Tenant.

**F.** This Agreement shall remain binding, even if, during Compensation Period, Principal enters into a listing agreement with any broker to sell or lease the Property.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale or lease that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Principal's property is offered for sale or lease (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.

**EXPOSURE TO BUYERS AND TENANTS THROUGH MLS:** Listing property with an MLS exposes a Principal's property to all real estate agents and brokers (and their potential buyer or tenant clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a Principal, and why, should be discussed with the agent taking the Principal's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and buyers or tenants they represent looking for property in the neighborhood, may not be aware the Property is for sale or lease.

**OPTING OUT OF MLS:** If Principal elects to exclude the Property from the MLS, Principal understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer or tenant clients, who have access to that MLS may not be aware that Principal's Property is offered for sale or lease; (b) Information about Principal's Property will not be transmitted to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Principal is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Principal understands that Broker must present all offers received for Principal's Property unless Principal gives Broker written instructions to the contrary.

**AUTHORITY TO ENTER IN MLS AFTER CLOSE OF ESCROW:** Principal gives Broker authority to enter Property in MLS after close of escrow to establish comparable sales or lease data or otherwise comply with MLS rules.

Principal's Initials ( ) ( )     Broker's/Agent's Initials ( NE ) ( )

---

© 2018, California Association of REALTORS®, Inc.
SP REVISED 12/18 (PAGE 1 OF 2)

**SINGLE PARTY COMPENSATION AGREEMENT (SP PAGE 1 OF 2)**

**2. AGENCY RELATIONSHIPS:**

**A.** If the Property includes residential property, commercial property, or a mobile home, and is being sold, or leased for a period exceeding one year, Broker acting as an agent for the Principal shall give Principal an agency disclosure form prior to presenting an offer to purchase or lease.

**B.** (Check one) In the transaction:

   **1.** ☐ Broker will act as agent for Principal exclusively in any resulting transaction.

   **2.** ☒ Broker will act as dual agent representing both Buyer/Tenant and Principal in any resulting transaction.

   **3.** ☐ Broker will act as agent for Buyer/Tenant exclusively in any resulting transaction. Principal agrees and understands that all acts of Broker, even those that assist Principal in performing or completing any of Principal's contractual or legal obligations, are intended for the benefit of Buyer/Tenant exclusively. Principal is advised to seek real estate, legal, tax, insurance, and all other desired assistance from other appropriate professionals.

**C.** This Agreement does not require Broker to solicit offers on the Property from Buyer/Tenant, nor does it authorize Broker to solicit offers from any other person or entity.

**3. EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state, and local anti-discrimination laws.

**4. APPLICABLE LAWS:** Principal agrees to comply with all applicable federal, state, and local laws and regulations regarding sale or lease of Property.

**5. ATTORNEY FEES:** In any action, proceeding, or arbitration between Principal and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Principal or Broker shall be entitled to reasonable attorney fees and costs except as provided in paragraph 6A.

**6. DISPUTE RESOLUTION:**

**A. MEDIATION:** Principal and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 6C.**

**B. ADDITIONAL MEDIATION TERMS: The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.**

**C. ADVISORY: If Principal and Broker desire to resolve any disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).**

**7. OTHER TERMS AND CONDITIONS:** _____

_____

_____

**8. ENTIRE CONTRACT:** All prior discussions, negotiations, and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be executed in counterparts.

☐ REPRESENTATIVE CAPACITY: This Single Party Compensation Agreement is being signed for Principal by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S or RCSD-LL). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Principal (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

By signing below, Principal acknowledges that Principal has read, understands, received a copy of and agrees to the terms of this Agreement.

Principal _____ **MICHAEL STOLLER** _____ **Michael Stoller** _____ Date 5/24/2022 | 8:
Address _____ City _____ State ___ Zip _____
Telephone _____ Fax _____ E-Mail _____
Principal _____ **Vanessa Stoller** _____ **Vanessa Stoller** _____ Date 5/24/2022 | 9
Address _____ City _____ State ___ Zip _____
Telephone _____ Fax _____ E-Mail _____

Real Estate Broker (Firm) _____ DRE Lic. # _____
Address _____ *Natalie Enster* _____ City _____ State ___ Zip _____
By _____ Tel. _____ E-mail _____ DRE Lic.# _____ Date _____
By _____ Tel. _____ E-mail _____ DRE Lic.# _____ Date _____

© 2018, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

SP REVISED 12/18 (PAGE 2 OF 2)

**SINGLE PARTY COMPENSATION AGREEMENT (SP PAGE 2 OF 2)**

# FAIR HOUSING & DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, 10/20)

**ASSOCIATION OF REALTORS®**

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§12900-12996,12955; 2 California Code of Regulations ("CCR") §§12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") §51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: Section 504 of Rehabilitation Act of 1973 29 U.S.C. §794; Ralph Civil Rights Act CC §51.7.; California Disabled Persons Act; CC §§54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION: Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.**
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership to, any of the following classes or categories is prohibited.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Sex | Sexual Orientation | Gender | Gender Identity | Gender Expression |
| Marital Status | Familial Status (family with a child or children under 18) | Source of Income (e.g., Section 8 Voucher) | Disability (Mental & Physical) | Medical Condition |
| Citizenship | Primary Language | Immigration Status | Military/Veteran Status | Age |
| Criminal History (non-relevant convictions) | | | Any arbitrary characteristic | |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") §10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation §2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR §2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.
   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2020, California Association of REALTORS®, Inc.
**FHDA 10/20 (PAGE 1 OF 2)**



## FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)

E. Inquiring about protected characteristics (such as querying tenants whether they are married, or prospective purchasers if they have children or are planning to start a family);

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheel chair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   (i)   Failing to allow that person to keep the service animal or emotional support animal in rental property,
   (ii)  Charging that person higher rent or increased security deposit, or
   (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: **https://www.dfeh.ca.gov/housing/**

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster.**

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS:** No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC,* 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race, the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | | |
|---|---|---|
| Buyer/Tenant _____ *Jair Sisso and or assignee* | DocuSigned by: *Jair Sisso and/or Assignee* | Date 5/24/2022 | 9:53 PM PD |
| Buyer/Tenant _____ | DocuSigned by: *Shay Gozlan* Shay Gozlan | Date 5/25/2022 | 3:21 AM PDT |
| Seller/Landlord _____ *MICHAEL STOLLER* | DocuSigned by: *MICHAEL STOLLER* Michael Stoller | Date 5/24/2022 | 8:28 PM PDT |
| Seller/Landlord _____ *Vanessa Stoller* | DocuSigned by: Vanessa Stoller | Date 5/24/2022 | 9:41 PM PD |

© 2020, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.



Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**FHDA 10/20 (PAGE 2 OF 2)**


Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          5747 HOBACK

# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP
### (As required by the Civil Code)
### (C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant | *Yair Sisso and/or Assignee* | Date 5/11/2022 | 7:44 PI |
|---|---|---|---|
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant | *Shay Gozlan* | Date 5/11/2022 | 8:00 PI |

Agent    **Keller Williams Studio City**     DRE Lic. # 01428774
           Real Estate Broker (Firm)
By *Natalie Erster*     **Natalie Erster** DRE Lic. # 02002385    Date 5/11/2022 | 7:36 PI
      (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**



### DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

2079.13. As used in Sections 2079.7 and 2079.14 inclusive, the following terms have the following meanings:

**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to be given pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in the offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgement of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17 (a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm ___ DO NOT COMPLETE. SAMPLE ONLY ___ License Number ___
Is the broker of (check one): ☐ the seller, or ☐ both the buyer and seller. (dual agent)
Seller's Agent ___ DO NOT COMPLETE. SAMPLE ONLY ___ License Number ___
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm ___ DO NOT COMPLETE. SAMPLE ONLY ___ License Number ___
Is the broker of (check one): ☐ the buyer, or ☐ both the buyer and seller. (dual agent)
Buyer's Agent ___ DO NOT COMPLETE. SAMPLE ONLY ___ License Number ___
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**AD REVISED 12/21 (PAGE 2 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com  5747 HOBACK

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.

2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§12900-12996,12955; 2 California Code of Regulations ("CCR") §§12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") §51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: Section 504 of Rehabilitation Act of 1973 29 U.S.C. §794; Ralph Civil Rights Act CC §51.7.; California Disabled Persons Act; CC §§54-55.32; any local city or county fair housing ordinances, as applicable.

3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.

4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership to, any of the following classes or categories is prohibited.

| Race | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Sex | Sexual Orientation | Gender | Gender Identity | Gender Expression |
| Marital Status | Familial Status (family with a child or children under 18) | Source of Income (e.g., Section 8 Voucher) | Disability (Mental & Physical) | Medical Condition |
| Citizenship | Primary Language | Immigration Status | Military/Veteran Status | Age |
| Criminal History (non-relevant convictions) | | | Any arbitrary characteristic | |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") §10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation §2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR §2780

6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.

7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of **(i)** actual or unconscious bias, and **(ii)** potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent **(i)** an upper level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or **(ii)** a house with a pool to a person with young children out of concern for the children's safety.

9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2020, California Association of REALTORS®, Inc.
FHDA 10/20 (PAGE 1 OF 2)

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**



E. Inquiring about protected characteristics (including tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheel chair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   (i) Failing to allow that person to keep the service animal or emotional support animal in rental property,
   (ii) Charging that person higher rent or increased security deposit, or
   (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

10. **EXAMPLES OF POSITIVE PRACTICES:**

A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.

B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.

C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.

D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").

E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

11. **FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.

A. Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**

B. State: **https://www.dfeh.ca.gov/housing/**

C. Local: local Fair Housing Council office (non-profit, free service)

D. DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**

E. Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**

F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

12. **LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**

A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;

B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved in the rental;**

C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;

D. An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and

E. Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).

F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

| | | | |
|---|---|---|---|
| Buyer/Tenant | *Yair Sisso and/or Assignee* | **Yair Sisso and/or Assignee** | Date 5/11/2022 \| 7:44 PM PDT |
| Buyer/Tenant | | **Shay Gozlan** | Date 5/11/2022 \| 8:00 PM PDT |
| Seller/Landlord | *MICHAEL STOLLER* | **Michael Stoller** | Date 5/24/2022 \| 8:28 PM PD |
| Seller/Landlord | *Vanessa Stoller* | **Vanessa Stoller** | Date 5/24/2022 \| 9:41 PM |

© 2020, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**FHDA 10/20 (PAGE 2 OF 2)**

**FAIR HOUSING & DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**



## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | | | |
|---|---|---|---|---|
| Seller | _DocuSigned by:_ **MICHAEL STOLLER** | **Michael Stoller** Date | 5/24/2022 | |
| Seller | _DocuSigned by:_ _Vanessa Stoller_ | **Vanessa Stoller** Date | 5/24/2022 | 9: |
| Buyer | _Yair Sisso and/or Assignee_ | **Yair Sisso and/or Assignee** Date | 5/11/2022 | 7:4 |
| Buyer | | **Shay Gozlan** Date | 5/11/2022 | 8:0 |

Buyer's Brokerage Firm **Keller Williams Studio City** DRE Lic # **01428774** Date

By _Natalie Erster_ DRE Lic # **02002385** Date 5/11/2022 | 7:3(
**Natalie Erster**

Seller's Brokerage Firm **KW luxury** DRE Lic # **01854035** Date

By _Brielle Liv_ DRE Lic # **01987008** Date 5/11/2022 | 7:3(
**Brielle Liv**

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**



**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**



# WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY
## (C.A.R. Form WFA, Revised 12/21)

Property Address: _**5747 Hoback Glen Rd, Hidden Hills, CA  91302-1229**_ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. **Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.**
2. **DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.**
3. **Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.**
4. **Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.**
5. **Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.**

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.**

| | | | | |
|---|---|---|---|---|
| Buyer/Tenant | _Yair Sisso and/or Assignee_ | | _**Yair Sisso and/or Assignee**_ Date 5/11/2022 \| 7:44 |
| Buyer/Tenant | | DocuSigned by: | **Shay Gozlan** Date 5/11/2022 \| 8:00 |
| Seller/Landlord | DocuSigned by: **MICHAEL STOLLER** | | **Michael Stoller** Date 5/24/2022 \| 8:28 |
| Seller/Landlord | _Vanessa Stoller_ | | **Vanessa Stoller** Date 5/24/2022 \| 9:41 P |

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

R E B S   L C   Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**WFA REVISED 12/21 (PAGE 1 OF 1)**

**WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)**

| Keller Williams Realty Studio City, 4061 Laurel Canyon Blvd Studio City CA 91604 | Phone: 8189158675 | Fax: | 5747 HOBACK |
|---|---|---|---|
| Natalie Erster | | | |

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. FORM RPA, 12/21)

**Date Prepared:** *May 11, 2022*

**1. OFFER:**

   **A. THIS IS AN OFFER FROM** _Yair Sisso and/or Assignee, Shay Gozlan_ ("Buyer").

   **B. THE PROPERTY** to be acquired is _5747 Hoback Glen Rd_, situated in _Hidden Hills_ (City), _Los Angeles_ (County), California, _91302-1229_ (Zip Code), Assessor's Parcel No(s). _2049-023-026_ ("Property").
     **(Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)**

   **C. THE TERMS OF THE PURCHASE ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.**

   **D.** Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

**2. AGENCY:**

   **A. DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.

   **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.

    Seller's Brokerage Firm _KW luxury_ License Number _01854035_
    Is the broker of (check one): [X] the Seller; or [ ] both the Buyer and Seller (Dual Agent).
    Seller's Agent _Brielle Liv_ License Number _01987008_
    Is (check one): [X] the Seller's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).
    Buyer's Brokerage Firm _Keller Williams Studio City_ License Number _01428774_
    Is the broker of (check one): [X] the Buyer; or [ ] both the Buyer and Seller (Dual Agent).
    Buyer's Agent _Natalie Erster_ License Number _02002385_
    Is (check one): [X] the Buyer's Agent. (Salesperson or broker associate); or [ ] both the Buyer's and Seller's Agent (Dual Agent).

   **C.** [ ] More than one Brokerage represents [ ] Seller, [ ] Buyer. See, Additional Broker Acknowledgement (C.A.R. Form ABA).

   **D. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a [X] "Possible Representation of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).

**3. TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 16 pages. The Parties are advised to read all 16 pages.

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| A | 5, 5B (cash) | **Purchase Price** | $ *5,526,000.00* | [X] All Cash |
| B | | **Close of Escrow (COE)** | [X] _60_ Days after Acceptance OR on [ ] _____ (date) | |
| C | 32A | **Expiration of Offer** | 3 calendar days after all Buyer Signature(s) or _____ (date), at 5PM or _____ [ ] AM/[ ] PM | |
| D(1) | 5A(1) | **Initial Deposit Amount** | $ *165,780.00* ( *3.0* % of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or ____) business days after Acceptance by wire transfer OR [ ] |
| D(2) | 5A(2) | [ ] **Increased Deposit** (Money placed into escrow after the initial deposit. Use form DID at time increased deposit is made.) | $ _____ ( ____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR [ ] _____ (date) OR [ ] |
| E(1) | 5C(1) | **Loan Amount(s):** First — Interest Rate — Points — If FHA or VA checked, Deliver list of lender required repairs | $ _____ ( ____ % of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed ____% Buyer to pay zero points or up to ____% of the loan amount 17 (or ____) Days after Acceptance | Conventional or, if checked, [ ] FHA [ ] VA (CAR Forms FVAC, HID attached) [ ] Seller Financing [ ] Other: _____ |
| E(2) | 5C(2) | **Additional Financed Amount** — Interest Rate — Points | $ _____ ( ____ % of purchase price) Fixed rate or [ ] Initial adjustable rate not to exceed ____% Buyer to pay zero points or up to ____% of the loan amount | Conventional or, if checked, [ ] Seller Financing [ ] Other: _____ |
| E(3) | 7A | **Occupancy Type** | Primary, or if checked, [ ] Secondary [ ] Investment | |
| F | 5D | **Balance of Down Payment** | $ *5,360,220.00* | |
| | | **PURCHASE PRICE TOTAL** | $ *5,526,000.00* | |

© 2021, California Association of REALTORS®, Inc.

**RPA 12/21 (PAGE 1 OF 16)**    Buyer's Initials _YS/a_ / _____    Seller's Initials _MS_ / _VS_

## CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 1 OF 16)

Keller Williams Realty Studio City, 4061 Laurel Canyon Blvd Studio City CA 91604    Phone: 8189158675    Fax:    5747 HOBACK
Natalie Erster    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com

| | Paragraph # | Paragraph Title or Contractual Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | **Seller Credit, if any, to Buyer** | ☐ $_____ ( _____ % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: |
| G(2) | | **ADDITIONAL FINANCE TERMS:** _____ | | |
| H(1) | 5B | **Verification of All Cash** (sufficient funds) | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(2) | 6A | **Verification of Down Payment and Closing Costs** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | |
| H(3) | 6B | **Verification of Loan Application** | Attached to the offer or ☐ 3 (or _____) Days after Acceptance | ☐ Prequalification ☐ Preapproval ☐ Fully underwritten preapproval |
| I | | | *Intentionally Left Blank* | |
| J | 16 | **Final Verification of Condition** | 5 (or _____) Days prior to COE | |
| K | 23 | **Assignment Request** | 17 (or _____) Days after Acceptance | |
| L | 8 | CONTINGENCIES | TIME TO REMOVE CONTINGENCIES | CONTINGENCY REMOVED |
| L(1) | 8A | **Loan(s)** | 17 (or _____) Days after Acceptance | ☒ No loan contingency |
| L(2) | 8B | **Appraisal:** Appraisal contingency based upon appraised value at a minimum of purchase price or ☐ $_____ | 17 (or _____) Days after Acceptance | ☒ No appraisal contingency Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 12 | **Investigation of Property** | 17 (or _21_) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | **Informational Access to Property** Buyer's right to access the Property for informational purposes is **NOT** a contingency, does **NOT** create cancellation rights, and applies even if contingencies are removed. | 17 (or _____) Days after Acceptance | Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See **paragraph 8H**. |
| L(4) | 8D, 14A | **Review of Seller Documents** | 17 (or _____) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(5) | 8E, 13A | **Preliminary ("Title") Report** | 17 (or _____) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(6) | 8F, 11K | **Common Interest Disclosures** required by Civil Code § 4525 or this Agreement | 17 (or _____) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(7) | 8G, 9B(6) | **Review of leased or liened items** (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or _____) Days after Acceptance, or 5 Days after receipt, whichever is later | ☐ CR attached |
| L(8) | 8J | **Sale of Buyer's Property** Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| M | | Possession | Time for Performance | Additional Terms |
| M(1) | | **Time of Possession** | Upon notice of recordation, OR ☐ 6 PM or _____ ☐ AM/ ☐ PM on date specified, as applicable, in 3M(2) or attached TOPA | |
| M(2) | 7C | **Seller Occupied or Vacant units** | COE date or, if checked below, ☐ _____ days after COE (29 or fewer days) ☐ _____ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form RLAS attached if 30 or more days. |
| M(3) | | **Tenant Occupied units** | See Tenant Occupied Property Addendum (C.A.R. form TOPA) | If tenant occupied ☐ TOPA or ☐ Other, attached |
| N | | Documents/Fees/Compliance | Time for Performance | |
| N(1) | 14A | Seller Delivery of Documents | 7 (or _____) Days after Acceptance | |
| N(2) | 19B | Sign and return Escrow Holder Provisions and Instructions | 5 (or _____) Days after receipt | |
| N(3) | 11K(2) | Time to pay fees for ordering HOA Documents | 3 (or _____) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or _____) Days after Acceptance | |
| N(5) | 28 | Evidence of representative authority | 3 Days after Acceptance | |
| O | | | *Intentionally Left Blank* | |

**RPA 12/21 (PAGE 2 OF 16)**   Buyer's Initials  _USAA_ / _____   Seller's Initials  _____ / MS   

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 2 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com   5747 HOBACK

| P | Items Included and Excluded | |
|---|---|---|
| **P(1)** | 9 | **Items Included** – All items specified in Paragraph 9B are included and the following, if checked: |

☐ Stove(s), oven(s), stove/oven combo(s);
☐ Refrigerator(s);
☐ Wine Refrigerator(s);
☐ Washer(s);
☐ Dryer(s);
☐ Dishwasher(s);
☐ Microwave(s);

☐ Video doorbell(s);
☐ Security camera equipment;
☐ Security system(s)/alarm(s), other than separate video doorbell and camera equipment;
☐ Smart home control devices;
☐ Wall mounted brackets for video or audio equipment;

☐ Above-ground pool(s) / ☐ spa(s);
☒ Bathroom mirrors, unless excluded below;
☐ Electric car charging systems and stations;
☐ Potted trees/shrubs;

**Additional Items included:**
☐ _____ ; _____
☐ _____ ; _____

| **P(2)** | 9 | **Excluded Items:** |
|---|---|---|

☐ _____ ; _____
☐ _____ ; _____

| Q | Allocation of Costs | | | |
|---|---|---|---|---|
| | **Paragraph #** | **Item Description** | **Who Pays** (if Both is checked, cost to be split equally unless Otherwise Agreed) | **Additional Terms** |
| **Q(1)** | 10A, 11A | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____ <br><br> ☐ Provided by: _____ | ☒ Environmental <br> ☐ Other _____ |
| **Q(2)** | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(3)** | | _____ Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(4)** | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(5)** | 10A 10B(2) | Government Required Point of Sale **inspections, reports** | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(6)** | 10B(2)(A) | Government Required Point of Sale **corrective/remedial actions** | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(7)** | 19B | Escrow Fees | ☐ Buyer ☐ Seller ☐ Both _____ <br> ☒ Each to pay their own fees | Escrow Holder: <br> *Escrow of the West* |
| **Q(8)** | 13 | Owner's title insurance policy | ☐ Buyer ☒ Seller ☐ Both _____ | Title Company (If different from Escrow Holder): <br> *TicorTitle* |
| **Q(9)** | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| **Q(10)** | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(11)** | | City transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| **Q(12)** | 11K(2) | HOA fee for preparing disclosures | Seller | |
| **Q(13)** | | HOA certification fee | Buyer | |
| **Q(14)** | | HOA transfer fees | ☐ Buyer ☒ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate HOA move-out fee and Buyer shall pay for separate move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| **Q(15)** | | Private transfer fees | Seller, or if checked, ☐ Buyer ☐ Both | |
| **Q(16)** | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(17)** | | _____ fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| **Q(18)** | 10C | Home warranty plan: _____ | ☐ Buyer ☐ Seller ☐ Both _____ <br> ☒ Buyer waives home warranty plan <br> Issued by: _____ | Cost not to exceed $ _____ |

| R | **OTHER TERMS:** *Escrow to be extended until the owners/ sellers vacate the property as long as 1 year.* |
|---|---|
| | _____ |
| | _____ |

Buyer's Initials  /    Seller's Initials  / 

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (RPA PAGE 3 OF 16)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    5747 HOBACK